UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRYSTAL HUDSON,                    Case No. 16-12999

     Plaintiff,                    Mark A. Goldsmith
v.                                 United States District Judge

COMMISSIONER OF SOCIAL             Stephanie Dawkins Davis
SECURITY,                          United States Magistrate Judge

     Defendant.

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 13)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On August 17, 2016, plaintiff Crystal Hudson filed the instant suit.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Mark A. Goldsmith referred this matter to the undersigned for the purpose of

reviewing the Commissioner's partially favorable decision denying plaintiff's

claim for a period of disability, disability insurance benefits, and supplemental

security income benefits prior to becoming disabled and granting supplemental

security income since the date she became disabled.  (Dkt. 3).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 12, 13).

### B.   Administrative Proceedings

Plaintiff filed her initial claim for disability insurance benefits ("DIB") payments on October 11, 2011.  (Tr. 15)[1].  The application was denied on January 31, 2012.  (*Id.*).  Plaintiff did not appeal the unfavorable determination, and it became the final decision of the Commissioner.  (*Id.*).

Plaintiff filed the instant claim for a period of disability and DIB under Title II and for supplemental security income ("SSI") under Title XVI on May 23, 2013.  (*Id.*).  The claims were initially denied on September 6, 2013.  Plaintiff requested a hearing and on January 6, 2015, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Kevin W. Fallis, who considered the case *de novo*.  (Tr. 16).  In a decision dated March 23, 2015, the ALJ found that, as to the application for period of disability and DIB, plaintiff was not disabled.  (Tr. 30).  As to the application for SSI, the ALJ found that plaintiff has been disabled since December 8, 2014.  (*Id.*).  Plaintiff requested a review of this decision.  (Tr. 9-10).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on July 16, 2016, denied plaintiff's request for review.  (Tr. 1); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

[1] The Administrative Record can be found at Dkt. 10.  References to its contents are denoted throughout this Report and Recommendation as "Tr." followed by the page number found in the lower right corner of the record.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff, born in 1959, was an individual closely approaching advanced age prior to the established disability onset date; and on December 8, 2014 plaintiff's age category changed to an individual of advanced age.  (Tr. 27).  The relevant period of eligibility for plaintiff's Title II claim is from February 1, 2012 (the day after the prior determination, which is the earliest possible onset date) to September 30, 2012 (plaintiff's date last insured).  (Tr. 15).  Plaintiff's period of eligibility under Title XVI is from May 23, 2013 (the protective filing date) through the present.  (Tr. 15).

The ALJ applied the five-step disability analysis and found at step one that plaintiff had not engaged in substantial gainful activity since the earliest possible onset date of disability, February 1, 2012.  (Tr. 18).  At step two, the ALJ found that plaintiff's status post left tibial fracture and arthroscopic surgery with residual pain and weakness, osteopenia, osteoarthritis, disc herniation of the cervical spine, obesity, carpal tunnel syndrome, fibromyalgia, depressive disorder, anxiety disorder, and substance use disorder (alcoholism) were "severe" within the

meaning of the second sequential step.  (*Id.*).  The ALJ found that some of the impairments—carpal tunnel syndrome, depressive disorder, anxiety disorder, and substance use disorder—were not established by objective medical evidence prior to the date last insured.  (Tr. 18).  At step three, the ALJ found no evidence that plaintiff's impairments singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 19).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that since February 1, 2012, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can only occasionally perform pushing or pulling.  She can only occasionally operate foot controls.  The claimant can only occasionally perform overhead reaching, and only frequently perform handling of objects and fingering activities bilaterally.  She can never climb ladders, ropes, or scaffolds, and can only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl.  The claimant is limited to jobs that can be performed while using a handheld assistive device that is required for uneven terrain or prolonged ambulation. She must avoid all exposure to excessive vibration and unprotected heights.  She must avoid concentrated use of hazardous moving machinery. Her work is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes. She can only have occasional and superficial interaction with co-workers and the public.

(Tr. 21-2). At step four, the ALJ found that since February 1, 2012, plaintiff was unable to perform any past relevant work. (Tr. 27). At step five, the ALJ denied plaintiff disability insurance benefits because he found that, prior to December 8, 2014, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed. (Tr. 28). However, the ALJ granted plaintiff supplement security income because he found that beginning December 8, 2014, there were no jobs that exist in significant numbers in the national economy that plaintiff could perform. (Tr. 29).

### B.    Plaintiff's Claims of Error

 Plaintiff claims error in the ALJ's failure to give her treating physicians' opinions controlling weight. (Dkt. 12, Pg ID 724). She claims that Ms. Brittney Westfall's opinions should have be given controlling weight rather than non-examining, non-treating physician Dr. Blaine Pinaire, Ph.D., because Dr. Pinaire's opinions are inconsistent with Ms. Westfall's opinions. (*Id.*). Ms. Westfall stated that plaintiff is unable to work due to her mental impairments, and given the treating relationship this opinion should have been given controlling weight. (*Id.*).

Further, plaintiff claims the ALJ erred in finding that Westfall's opinion was inconsistent with her assessment. (*Id.* at Pg ID 725). Westfall gave plaintiff a GAF score of 51-55 and the ALJ noted that Westfall also found that plaintiff had marked loss in certain areas such as capacity in memory and understanding.

However, Westfall stated that plaintiff had moderate loss in only some of the areas, rather than marked loss in all areas as the ALJ stated.  (*Id.*).  The ALJ gave significant weight to the GAF scores (50-60) in the record from different therapists.  (*Id.*).  However, plaintiff states that GAF scores are no longer used and should not be relied upon.

Plaintiff also states that the ALJ gave little weight to a treating physician, indicating that the statement by the doctor is non-specific.  (*Id.* at Pg ID 727).  Plaintiff does not name the physician.  Plaintiff contends that the evidence is clear that plaintiff's arthritis and leg fracture from an accident prevent her from working full time, and so the opinion is not non-specific.  (*Id.*).  Plaintiff asks that her treating physicians be given greater weight.

Plaintiff also takes issue with the ALJ's statements on her alcoholic behavior, even though he stated that substance use did not impact his decision.  (*Id.* at Pg ID 726).  She contends that the record does not show any treatment for alcoholism and she was not diagnosed an alcoholic.  (*Id.*).

The rest of plaintiff's brief is devoted to what appears to be an argument that the RFC is not supported by substantial evidence.  Since her car accident on June 18, 2011, plaintiff has had neck and shoulder pain, arthritis, and suffers from fatigue.  (*Id.*).  She has not worked since the accident and now also suffers from hip pain.  She cannot walk for long periods of time, she cannot complete household

6

chores without problems, and does not do any chores outside. (*Id.*). She must now use a cane to walk or else she will fall. (*Id.*). Her medication side effects cause her to be exhausted, nauseated, and have headaches. (*Id.* at Pg ID 726-27). Medication and steroidal injections do not reduce her pain. (*Id.* at Pg ID 727). According to plaintiff, the ALJ's decision that she could perform light work is erroneous because the evidence supports a finding of sedentary work, not light work. Plaintiff testified that she cannot lift a gallon of milk, precluding a finding that she could perform light work. (*Id.*). A finding of sedentary work would have directed a finding of "disabled" because she was a person approaching advanced age under the Medical-Vocational Guidelines. (*Id.*). Further, she testified that she is always tired and she would likely be off task 20% of the day and miss work more than three times a month. (*Id.*).

Plaintiff also points to her grip strength test from Dr. Asit Ray which found that her right side grip strength is 45 pounds and her left side is 40 pounds, precluding her from performing light work. (*Id.* at Pg ID 728). The three jobs the vocational expert produced: bench assembly, packer, and inspector, all include gripping in the job, but with poor grip strength she would not be able to perform those jobs. (*Id.*).

     C.    <u>Commissioner's Motion for Summary Judgment</u>

The Commissioner argues that the ALJ properly gave Ms. Westfall's opinions no weight.  (Dkt. 13, at p. 7).   According to the Commissioner, the record does not contain the opinion of a treating physician as to her mental impairments according to 20 C.F.R. § 404.1502 and 20 C.F.R. § 404.1513(a)(1)–(5).  (*Id.*).  The only acceptable medical source addressing plaintiff's mental impairments is Dr. Pinaire.  (*Id.* at p. 8).  Plaintiff's therapist, Brittney Westfall, LLMSW, is not an acceptable medical source because "[L]imited License Master Social Workers are not 'acceptable medical sources' under the Regulations."  (*Id.* citing *Pinkett v. Comm'r of Soc. Sec.*, No. 15-cv-12226, 2016 WL 5369611, at *8 (E.D. Mich. Sept. 26, 2016)).  Thus, the ALJ was not required to give Ms. Westfall's opinion any weight at all, but rather was permitted simply to consider the opinion.  (*Id.*).  Not only is Ms. Westfall's opinion not an acceptable medical source, the ALJ provided multiple additional reasons for discounting her statements.  (*Id.* at p. 9).  Ms. Westfall's one-paragraph letter stating that plaintiff was unable to work due to her mental health symptoms was a "bald conclusion" and did not provide a function-by-function analysis.  (*Id.* at p. 9-10).  Further, Ms. Westfall's "Medical Source Statement" was discounted because it was internally inconsistent and inconsistent with her treatment notes.  (*Id.* at p. 10).  For example, the ALJ found that Ms. Westfall's check offs for marked limitations were inconsistent with her notation that plaintiff's GAF scores ranged from 51–55 over the previous year, when a GAF

score of 51-60 indicates only moderate symptoms or moderate difficulty in social, occupational, or school functioning. (*Id.* at p. 11; Tr. 25). Further, Ms. Westfall's opinion was inconsistent with plaintiff's treatment notes. Plaintiff at times presented to her doctors with a normal mood, affect, behavior, judgment, and thought processes; and the ALJ noted that at other times she presented a depressed mood, anxiety, insomnia, mood swings, substance abuse, impaired judgment, and feelings of hopelessness. (*Id.* at 11-2; Tr. 25, 453-60). Additionally, the ALJ noted that Ms. Westfall's observation that Plaintiff could handle her own finances was inconsistent with her statements that Plaintiff suffered from marked limitations in concentration, memory, understanding, and the ability to complete tasks. (*Id.* at p. 12).

Regarding plaintiff's argument that the ALJ should not have given her GAF scores significant weight, the Commissioner argues that the ALJ did not rely on her GAF scores to determine she was not disabled. (*Id.* at p. 13). Instead, the ALJ considered the GAF scores as one piece of evidence that was inconsistent with Ms. Westfall's statements. (*Id.*; Tr. 24-25).

Dr. Pinaire provided the only acceptable medical source opinion on plaintiff's mental impairments. (*Id.* at p. 14). Because Dr. Pinaire's opinion was consistent with the medical record and reflected "the degree of psychological limitation that the claimant experienced during the relevant periods of eligibility,"

the ALJ accorded the opinion significant weight.  (*Id.*; Tr. 26).  In particular, Dr. Pinaire opined that plaintiff could understand, remember, and carry out simple instructions, make judgments commensurate with unskilled work, and perform simple 1–2 step tasks on a regular and continuing basis.  (Dkt. 13, at p. 14; Tr. 100).  The ALJ assessed a mental RFC for plaintiff that was consistent with Dr. Pinaire's opinion.  (Dkt. 13, at p. 14; Tr. 21–22, 26, 100).

As to plaintiff's physical impairments, the Commissioner contends that the ALJ's assessment of the medical evidence is supported by substantial evidence.  (Dkt. 13, at p. 14).  The Commissioner points out that plaintiff claims that the ALJ erred because he gave little weight to her treating physician, yet fails to name the physician to whom she is referring.  Instead, she points to Exhibit 6F which contains treatment notes from two physicians: Janet Robinson, M.D. and Ajay Srivastava, M.D.  (*Id.* at p. 15; Tr. 411-15).  Dr. Srivastava wrote that plaintiff "has pain that is enough to stop her from working to her full capacity."  (Dkt. 13, at p. 15; Tr. 415).  The ALJ gave this statement "little weight" because it was "too generic and nonspecific to be of real use in making a function-by-function analysis."  (Dkt. 13, at p. 15; Tr. 24).  The Commissioner argues that Dr. Srivastava's statement does not meet the standard requiring that a doctor's statement "reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite

impairment(s), and your physical or mental restrictions."  (Dkt. 13, at p. 15; 20

C.F.R. § 404.1527(a)(2)).  Further, this statement concerns a matter reserved for

the Commissioner and thus was due no special significance.  (Dkt. 13 at p. 16; 20

C.F.R. § 404.1527(d)(3)).  Additionally, Dr. Srivastava's treatment note indicates

that he would not keep plaintiff on restrictions anymore and that he wanted her to

go back to work.  (Dkt. 13, at p. 16; Tr. 415).  When plaintiff saw Dr. Srivastava

again a year later he indicated that plaintiff would be "treated conservatively."

(Dkt. 13, at p. 16; Tr. 421-22).  Thus, the ALJ properly evaluated Dr. Srivastava's

statement.

The Commissioner argues that plaintiff's assertion that she has reduced grip

strength and thus cannot perform light work is incorrect.  Dr. Asit Ray found that

plaintiff had reduced grip strength, numbness, and tingling in her right hand, but

did not indicate that her grip strength scores indicated "poor grip strength."  (Dkt.

13, at p. 17).  Further, although Dr. Ray noted a positive Phalen's (carpal tunnel)

test on her right hand, he also noted that she could make a full fist with complete

closure, showed no atrophy of the intrinsic hand muscles, and could open a jar with

both hands.  (*Id.*; Tr. 504).  Dr. Ray did not assess any functional limitations, but

rather suggested that plaintiff retained a functional capacity requiring no

restrictions.  (*Id.*; Tr. 505).  The ALJ properly assigned Dr. Ray's opinion little

weight and assessed an RFC that was more limited than Dr. Ray's report. (Dkt. 13, at p. 17).

As to plaintiff's argument that the RFC is not supported by substantial evidence, the Commissioner first points out that plaintiff did not challenge the ALJ's assessment of her subjective complaints, thus rendering that argument waived. (*Id.* at p. 19). According to the Commissioner, the ALJ properly discounted plaintiff's subjective complaints. The ALJ found her complaints were undermined by her ability to engage in daily activities. (*Id.* at p. 20). The ALJ noted that her symptoms were described as mild, and they improved with treatment. (*Id.*). These considerations support the ALJ's decision to give plaintiff's subjective complaints limited credibility.

Finally, the Commissioner argues that the Court lacks subject matter jurisdiction to decide plaintiff's possible claim of error in failing to reopen her initial claim. Plaintiff filed her initial application on October 11, 2011. (*Id.* at p. 21; Tr. 15). The application was denied January 31, 2012 and plaintiff did not appeal that determination. (*Id.*). Plaintiff states there is ample evidence to reopen the prior application. The Commissioner points out that plaintiff made the same conclusory statement in her brief before the Appeals Council. (Tr. 301, 298-302). According to the Commissioner, in both instances the argument was undeveloped and should be deemed waived. (Dkt. 13, at p. 21). The Commissioner argues that,

notwithstanding plaintiff's failure to develop the argument, this Court does not

have jurisdiction to entertain this claim because the regulations provide that "[a]

determination, revised determination, decision, or revised decision may be

reopened . . . ."  20 C.F.R. § 416.1488.  Because the regulations are permissive in

nature, the Act does not permit judicial review of alleged abuses of agency

discretion.  (Dkt. 13, at p. 21).

     D.    <u>Plaintiff's Reply</u>

In her reply brief plaintiff attacks for the first time the jobs found at Step

Five.  Plaintiff claims that the job descriptions are inconsistent with the limitations

in the RFC.  (Dkt. 14, Pg ID 757-59).  The ALJ limited plaintiff to work free from

fast-paced production requirements and occasional and superficial interaction with

co-workers, yet the assembler description states "assembly line" and "frequently

works at bench as member of assembly group assembling one or two specific parts

and passing unit to another worker."  (*Id.* at Pg ID 757-58).  Therefore plaintiff

could not perform the assembler position.  A paint-spray inspector also includes a

production line statement, putting plaintiff in a fast-paced environment, as well as

having plaintiff stoop, kneel, crouch, and crawl, which the ALJ limited to only

"occasionally."  (*Id.* at Pg ID 758).  The shoe packer position does not provide

much detail but plaintiff maintains that because it is a packer position it would

involve the constant use of her hands for handling objects, contrary to the ALJ's

limitations.  (*Id.* at Pg ID 759).  Plaintiff claims that none of the proposed jobs are consistent with the ALJ's limitations.

## III.   DISCUSSION

A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

>                inability to engage in any substantial gainful activity by
>                reason of any medically determinable physical or mental

impairment which can be expected to result in death or
which has lasted or can be expected to last for a
continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.      Analysis and Conclusions

1.      Treating Physician

a.      Legal Standards

The opinion of a treating physician should be given controlling weight if it

is:  (1) "well-supported by medically acceptable clinical and laboratory diagnostic

techniques," and (2) "not inconsistent with the other substantial evidence in [the]

case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004);

20 C.F.R. § 404.1527(c)(2).  The Commissioner is required to provide "good

reasons" for discounting the weight given to a treating-source opinion.  These

reasons must be supported by the evidence in the case record, and must be

sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that

weight.  *Gayheart v. Comm'r of Soc. Sec*., 710 F.3d 365, 376 (6th Cir. 2013).

Once an ALJ has determined that a treating source opinion is not entitled to

controlling weight, the ALJ must apply specific factors to resolve the question of

what weight will be assessed.  Those factors include, (1) the length of the treatment

relationship and frequency of examination, (2) the nature and extent of the

treatment relationship, (3) supportability of the opinion, (4) consistency of the

opinion with the record as a whole, and (5) the specialization of the treating source.

*Id.; see also Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(c).

> This requirement is not simply a formality; it is to
> safeguard the claimant's procedural rights. It is intended
> "to let claimants understand the disposition of their
> cases, particularly in situations where a claimant knows
> that his physician has deemed him disabled and therefore
> might be especially bewildered when told by an
> administrative bureaucracy that [ ] he is not.
> Significantly, the requirement safeguards a reviewing
> court's time, as it "permits meaningful" and efficient
> "review of the ALJ's application of the [treating
> physician] rule."

*Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citations omitted). "This circuit 'has made clear that [it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion.'" *Gayheart,* 710 F.3d at 380 (quoting *Cole*, 661 F. 3d at 939).

> b.     Ms. Brittney Westfall, LLMSW

The ALJ accorded some of Westfall's statements little weight and some no weight because of internal inconsistencies, inconsistencies with the record, and because Ms. Westfall, as a Limited License Master Social Worker, is not an acceptable medical source.  (Tr. 25).  The record does not support a finding of error.

"Limited License Master Social Workers are not 'acceptable medical sources" under the Regulations."  *Pinkett v. Comm'r of Soc. Sec.*, 2016 WL 5369611, at *8 (E.D. Mich. Sept. 26, 2016) (citing 20 C.F.R. § §§ 404.1513(d), 416.913(d)).  Opinions from sources not considered "acceptable

medical sources" should still be evaluated when assessing the severity and impact of an individual's impairments, *see* 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, 2006 WL 2329939, at *2, *3 (Aug. 9, 2006), but the ALJ is not required to accord those opinions "any special weight or consideration as is required with the opinions of doctors." *Id.* (citing *Taylor v. Comm'r of Soc. Sec.*, 2012 WL 1029299, at *6 (W.D. Mich. Mar. 26, 2012)).  Social Security Ruling 06-03p provides certain factors the ALJ may weigh when evaluating "other opinions," including

> • How long the source has known and how frequently the source has seen the individual;
> • How consistent the opinion is with other evidence;
> • The degree to which the source presents relevant evidence to support an opinion;
> • How well the source explains the opinion;
> • Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
> • Any other factors that tend to support or refute the opinion.

2006 WL 2329939, at *4-5.

Here, the ALJ assigned Westfall's statements little or no weight because, although she had a longstanding treatment relationship with plaintiff, she was not an acceptable medical source, and because her statements contained a number of inconsistencies.  The ALJ explained that Ms. Westfall's statement on October 28, 2013—that plaintiff was unable to work due to her mental impairments—was a bald conclusion.  Indeed, Westfall did not provide the basis for her conclusion, and the statement itself did not provide any means of assessing plaintiff's mental status

on a function-by-function basis.  Therefore the ALJ gave it no weight.  (Tr. 25; Tr.

523).  Ms. Westfall's GAF score evaluation of 51-55 was given little weight

because it was inconsistent with her notes that plaintiff experienced marked loss of

capacity in memory, understanding, follow-through, concentration, interpersonal

communication skills, adaptability, goal-setting, traveling, grooming, and stress-

coping skills.  (Tr. 25).  Plaintiff's contention that the ALJ relied on the GAF

scores in making the disability determinations is overstated.  On the one hand, it is

true that the Social Security Administration does not endorse the GAF scale for

"use in the Social Security and SSI disability programs" because a GAF score is

not determinative of an individual's RFC, and has concluded that GAF scores have

no "direct correlation to the severity requirements in [the] mental disorders

listings."  *See* Revised Medical Criteria for Evaluating Mental Disorders and

Traumatic Brain Injury, 65 Fed. Reg. 50746-01 (August 21, 2000).  On the other

hand, while GAF scores may not serve as the sole basis for making a disability

determination, the Sixth Circuit has indicated that the scores may be taken into

account in considering the record as a whole.  *Howard v. Comm'r of Soc. Sec.*, 276

F.3d 235,241 (6t h Cir. 2002); see also *Kornecky v. Commissioner of Social*

*Security*, 167 Fed. Appx. 496, 511 (6th Cir. 2006).  Here, the ALJ merely

considered the GAF score assessments as one factor amongst many in evaluating

plaintiff's disability.  Indeed, in relation to the GAF scores assessed by Ms.

Westfall, the ALJ's consideration centered on the inconsistency between her description of plaintiff's functioning and what those scores are supposed to represent.  Further, Ms. Westfall concluded that plaintiff experienced marked difficulties in social functioning and repeated episodes of decompensation and that she had marked loss of concentration and ability to complete tasks, yet indicated that plaintiff was able to manage her own benefits.  (*Id.*).

The undersigned finds no err in the ALJ's consideration of Ms. Westfall's opinions.  Since the ALJ was not required to accord Ms. Westfall's statements any special weight, and because he considered the factors under SSR 06-03p, plaintiff's argument with regard to the ALJ's assessment of Ms. Westfall's opinions fails.

### c.    Dr. Ajay Srivastava

Plaintiff claims that the ALJ erroneously gave a treating physician little weight because the physician's statement is non-specific.  (Dkt. 12, Pg ID 727).  She cites Exhibit 6F in support, but does not identify the physician to whom she is referring.  (*Id.*).  Exhibit 6F contains reports from Dr. Janet Robinson and Dr. Ajay Srivastava.  (Tr. 411-15).  Plaintiff claims that the report clearly shows that she cannot work full time.  (Dkt. 12, Pg ID 727).  The ALJ discussed Dr. Srivastava's opinion in 6F but did not discuss Dr. Robinson's report.  Thus, the undersigned assumes plaintiff is referring to the weight given to Dr. Srivastava's opinion.  Dr. Srivastava stated that plaintiff's pain from her arthritis and tibial fracture were

24

enough to keep her from working to her full capacity.  (Tr. 415).  The ALJ gave

Dr. Srivastava's opinion little weight "because it is too generic and nonspecific to

be of real use in making a function-by-function analysis of the claimant's

functional capacity."  (Tr. 24).  The ALJ did not further explain his weight

determination or analyze any of the factors in 20 C.F.R. § 404.1527(c).

The undersigned agrees with the Commissioner that Dr. Srivastava's

statement falls below the standard necessary for an opinion to be classified as a

"medical opinion" under the regulations.  "Medical opinions are statements from

acceptable medical sources that reflect judgments about the nature and severity of

your impairment(s), including your symptoms, diagnosis and prognosis, what you

can still do despite impairment(s), and your physical or mental restrictions."  20

C.F.R. § 404.1527.  Dr. Srivastava's statement does not explain how plaintiff's

symptoms keep her from working at her full capacity or otherwise describe what

she can still do despite her impairments - other than to say she should go back to

work.  The opinion is, therefore, not a medical opinion.  Therefore, plaintiff's

argument regarding Dr. Srivastava's weight assignment fails.

Alternatively, even if the opinion were a medical opinion, any error in the

ALJ's analysis rejecting the opinion is harmless.  The Sixth Circuit in *Wilson*, 378

F.3d 547, identified certain instances in which failure to abide by the "good

reasons" requirement may constitute harmless error.

25

> The Wilson court refused to decide whether a *de minimis* violation of the § 1527(d)(2)[2] procedural requirement may qualify as harmless error, but noted instances [in] which it might: 1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; 2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or 3) "where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation."

*Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 547).  Dr. Srivastava's opinion is patently deficient as discussed more fully below.

In *Sharp v. Barnhart*, 152 Fed. Appx. 503 (6th Cir. 2005), the plaintiff argued that the ALJ failed to respect the opinions of his treating physician.  The plaintiff's orthopedic doctors stated that he would miss 10 days of work a month because of knee and ankle problems but failed to explain why these problems would cause him to miss work at the sedentary level.  *Id.* at 508.  The court thus held that even if the ALJ erred in not complying with the procedural requirements for rejecting a treating physician's opinion, any error was harmless because the physician's opinion was so patently deficient that the ALJ could not possibly credit it.  *Id.* (citing *Wilson,* 378 F.3d at 547).

---

[2] This statutory provision was updated after the *Nelson* opinion.  The factors are now found at 20 C.F.R. § 404.1527(c)(2-6).

Here, Dr. Srivastava's statement does not explain how plaintiff's symptoms keep her from working at her full capacity, or what he means by "full capacity." Further, three lines later Dr. Srivastava states that he would like her to go back to work and that he will no longer keep her on restrictions. (Tr. 415). The opinion provides nothing from which the ALJ could glean what plaintiff's actual functional limitations might be. The omission of this information from the opinion renders it of little to no use for purposes of fashioning an RFC or otherwise assessing disability. Thus, as in *Sharp*, any error in failing to comply with the procedural requirements for discounting a treating physician's opinion is harmless because Dr. Srivastava's statement in Exhibit 6F is patently deficient.

### 2.    RFC

The RFC is supported by substantial evidence. Plaintiff claims the RFC is inaccurate because the evidence supports a finding of sedentary work rather than light work. However, the medical and other evidence in the record supports a light work RFC. Plaintiff relies in part on her own testimony and subjective complaints to prove that she cannot perform light work. She claims that she cannot walk for long periods of time and that she cannot lift a gallon of milk. (Dkt. 12, at Pg ID 726, 727). However, the ALJ found her subjective complaints not entirely credible. (Tr. 27). Specifically, the ALJ stated, "[t]o the extent that the claimant alleges that she was more limited before December 8, 2014, than credited in the

above determination, that position is undermined by the claimant's significant

capacity to complete her daily living activities, the medically documented

improvement that the claimant experienced from treatment, her consistent

presentation (normal cognition and socialization) throughout the record, and the

laboratory testing showing that her physical impairments were generally mild."

(Tr. 27). Plaintiff does not challenge this determination. Further, "[c]redibility

determinations concerning a claimant's subjective complaints are peculiarly within

the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d

589, 592 (6th Cir. 1987). "Upon review, [the court must] accord to the ALJ's

determinations of credibility great weight and deference particularly since the ALJ

has the opportunity, which [the court] d[oes] not, of observing a witness's

demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th

Cir. 2003). Thus, an ALJ's credibility determination will not be disturbed "absent

compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ

is not required to accept the testimony of a claimant if it conflicts with medical

reports, the claimant's prior statements, the claimant's daily activities, and other

evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th

Cir. 1997). Here, as explained above, plaintiff's testimony and subjective

complaints were not entirely credible because they conflicted with her daily

activities and the medical evidence in the record.  (Tr. 27).  As such, there is no reason to call into question the ALJ's determination here.

Plaintiff relies on Dr. Asit Ray's opinion that her right side grip strength is 45 pounds and her left side is 40 pounds to prove that she cannot perform the jobs of bench assembler, packer, or inspector because they involve gripping.  (Dkt. 12, Pg ID 728).  However, Dr. Ray does not indicate, as plaintiff claims, that this grip strength is "poor."  The ALJ accorded Dr. Ray's opinion little weight because he found the testimony at the hearing revealed that plaintiff was, in fact, more limited than what Dr. Ray assessed.  (Tr. 25).  In any event, plaintiff does not contest the weight given to Dr. Ray's opinion.

In light of the weight and credibility determinations discussed above, the RFC is supported by substantial evidence.  After a thorough discussion of all of plaintiff's impairments, the ALJ accommodated her physical impairments to the extent necessary in the RFC.  (Tr. 22-27).  As to her mental impairments, the ALJ explained that the record does not establish that plaintiff had or was treated for mental impairments during the Title II period, but there exists evidence of mental impairments during the Title XVI period.  (Tr. 26).

### 3.    Failure to Reopen the Initial Application

Plaintiff states that, "There is ample evidence to re-open the initial application, however, even not re-opening the first application and restricting the

time-frame does not change the fact that all of Ms. Hudson's medical and mental issues were still present."  (Dkt. 12, Pg ID 726).  The Commissioner treats this as an argument that the ALJ erred in not reopening her initial application and argues that this Court does not have subject matter jurisdiction to entertain that argument.

The undersigned agrees that this Court does not have subject matter jurisdiction to review refusal to reopen an application.  The Sixth Circuit has stated, "A decision not to reopen is within the ALJ's discretion and is unreviewable by the courts unless a constitutional issue is involved."  *Gay v. Comm'r of Soc. Sec.*, 520 Fed. Appx. 354, 357 (6th Cir. 2013) (citing *Califano v. Sanders,* 430 U.S. 99, 107–08 (1977)).

Here, there is no evidence that plaintiff requested that the initial application be reopened and plaintiff did not appeal the denial of her initial application.  (Tr. 15).  Even if she had so requested, plaintiff does not allege any constitutional violation that would permit this Court to review the decision to deny reopening.  Thus, this Court does not have subject matter jurisdiction to review the ALJ's decision not to reopen her initial application.

### 4.    Vocational Expert Testimony

Plaintiff argues that the jobs found at Step Five do not match the limitations the ALJ included in the RFC.  She raises this argument for the first time in her reply brief (the statement in her Motion for Summary Judgment that the three jobs

listed in the ALJ decision require gripping but her grip strength is poor, does not raise the argument that the jobs are inconsistent with the RFC.  Rather, that statement was in support of her argument that the RFC is not supported by substantial evidence.).  Because this is argument is raised for the first time in her reply brief, the argument is waived.  *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs . . . do not provide the moving party with a new opportunity to present yet another issue for the court's consideration. Further the non-moving party ordinarily has no right to respond to the reply brief. . . . As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived.") (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)); *Newsome v. Comm'r of Soc. Sec.*, 2014 WL 5362456 at *8 (E.D. Mich. Sept. 24, 2014) (citing *Martinez v. Comm'r of Soc. Sec.*, 2011 WL 1233479 at *2 (E.D. Mich. March 30, 2011)).

     5.      Argument Waived

Plaintiff appears to claim error in the fact that the ALJ discussed plaintiff's use of alcohol.  She states:

> [T]he ALJ has made significant statements to Ms. Hudson's alcoholic behavior. Still finding that it was not an impact on his decision. But, the record does not show that Ms. Hudson was treated for any alcoholism. She had a car accident where alcohol was involved, but at no time has she been diagnosed an alcoholic or had any substance

> abuse treatment, only statements during her counseling
> sessions that she had an occasional drink and that she
> probably first tried alcohol at age 12, not that she began
> drinking at that age or ever drank heavily.

(Dkt. 12, Pg ID 726). Notably, the ALJ cites to the record concerning plaintiff's

history with alcohol. (Tr. 24) It is unclear what plaintiff's argument is, but any

argument here is waived. "[Issues] adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived."

*United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996); *see also Kennedy v.*

*Comm'r of Soc. Sec.*, 87 Fed. Appx. 464, 466 (6th Cir. 2003). "It is not sufficient

for a party to mention a possible argument in the most skeletal way, leaving the

court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96

(6th Cir. 1997). The undersigned will not scour the record to find a potential

argument.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, and that defendant's

motion for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 31, 2018                    s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 31, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7850
<u>tammy_hallwood@mied.uscourts.gov</u>